UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:25-cv-80578

EVERLONG, LLC, a Florida Limited
Liability Company, on its own behalf,
and as assignee of OAKMONT
STABLES, LLC, a Florida Limited
Liability Company,

        Plaintiff,

vs.

GREAT AMERICAN ASSURANCE
COMPANY, an Ohio corporation,

        Defendant.
_____/

## COMPLAINT

Plaintiff, Everlong, LLC, on its own behalf and as assignee of Oakmont Stables, LLC, sues the Defendant, Great American Assurance Company, and alleges as follows:

### PARTIES

1. At all material times, the Plaintiff, Everlong, LLC ["Everlong"], was and is a Florida limited liability company.

2. At all material times, the sole manager and member of Everlong was and is Ann Thompson, a resident and citizen of the state of Virginia.

3. At all material times, Oakmont Stables, LLC ["Oakmont" or "Oakmont Stables"] was and is a Florida limited liability company. Its members are Darragh Kenny and Jack Hardin Towell. Upon information and belief, Mr. Kenny is a citizen of Ireland, and Mr. Towell is a citizen of Florida.

Kutner, Rubinoff & Moss, LLP
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133 ◆ Phone: 305.358.6200 ◆ www.krmlegal.com

4. Oakmont Stables has assigned its claims to the Plaintiff, Everlong.

5. At all material times, the Defendant, Great American Assurance Company ["Great American"], was and is an insurance company organized and incorporated in the state of Ohio, and its operational "nerve center" is located in Ohio.

6. At all material times, Great American engaged in the business of issuing insurance policies in Florida and handling insurance claims in Florida.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) as the Plaintiff is of diverse citizenship from the Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue in this District is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this claim occurred in Palm Beach County, Florida.

## FACTUAL ALLEGATIONS

*The Underlying Litigation*

9. The Plaintiff, Everlong, owns elite show jumping horses that compete internationally, including in the Olympics. Everlong retained Darragh Kenny to ride, train, and care for its horses, as well as to compete in international competitions.

10. On March 1, 2021, Everlong filed a complaint against Darragh Kenny, Oakmont Stables, Oakland Ventures, LLC, Whiterock Farm Limited, and Carmen Barrera. The case was filed in the Circuit Court for Florida's Fifteenth Judicial Circuit in and for West Palm Beach Florida, and was assigned Case No. 502021 CA002770XXXXMB.

Page 2 of 14

**KUTNER, RUBINOFF & MOSS, LLP**
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133  ◆  Phone: 305.358.6200  ◆  www.krmlegal.com

11. In this lawsuit, Everlong alleged that Darragh Kenny, along with the other defendants, defrauded Everlong by, among things, stealing prize money due to Everlong, selling horses and failing to share sale proceeds, charging personal and unrelated business expenses to Everlong, stealing and selling valuable horse straws (semen), and a variety of other fraudulent acts.

12. Kenny owned and operated Oakmont Stables, which was located in Wellington, Florida.  Oakmont owned horses as well as provided boarding and training services for elite horses and riders.

13. Oakland Ventures was Kenny's corporate entity for his equine-related activities based in Virginia.

14. Whiterock Farm Limited as an Irish entity for Kenny's equine-related activities in Ireland.

15. Carmen Barrera was Kenny's business partner in these above-named entities.

16. As part of its allegations in the underling litigation, Everlong claimed that Oakmont Stables damaged Everlong's horses by allowing lesser trained riders ride its horses and stole prize money due to Everlong.

17. Everlong also alleged that Oakmont, along with the other defendants, were engaged in fraudulent conduct and conspiracy to commit fraud.

18. Oakmont was insured by the Defendant, Great American.  The coverage provided by Great American to Oakmont is discussed in detail below.  Oakmont was the only Defendant in the underlying litigation with insurance coverage that covered any of the claims brought by Everlong.

Page 3 of 14

**Kutner, Rubinoff & Moss, LLP**
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133  ♦  Phone: 305.358.6200  ♦  www.krmlegal.com

19. After years of litigation, Everlong settled with the Defendants. As part of this settlement, Oakmont entered into a consent judgment with Everlong in the amount of $3.2 million. [Consent Judgment attached as Exhibit A.] Oakmont then assigned to Everlong its right to pursue claims against Great American. [Settlement and Assignment Agreement attached as Exhibit B.]

***The Great American Coverage***

20. Great American provided insurance coverage to Oakmont pursuant to Equine Professional Services Coverage. [Policy attached as Exhibit C.]

21. On August 11, 2021, Great American issued a reservation of rights letter to Oakmont. [Letter attached as Exhibit D.] The letter confirmed that Great American was providing $1.25 million in insurance coverage under its Equine Professional Services Liability Endorsement. Within this endorsement, $1 million in coverage was provided for "other than equine sale wrongful acts," and $250,000 in coverage was provided for "equine sales wrongful acts."

22. Both coverage parts included payment of fees and costs for defending the claims, which is commonly known as an "eroding policy." Stated otherwise, every dollar spent on defending the claims reduced the policy limits by an equal amount.

23. In its August 11, 2021 reservation or rights letter, Great American explicitly notified Oakmont that it was covering Darragh Kenny solely "with respect to the conduct of Oakmont Stables' operations and/or his duties as a manager of Oakmont Stables." Great American further explained, "Mr. Kenny is not an 'insured' under the Policy with respect to any liability arising out of duties or acts taken on behalf of Oakland Ventures, Whiterock Farm Limited, or in a personal capacity."

Page 4 of 14

Kutner, Rubinoff & Moss, LLP
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133 ♦ Phone: 305.358.6200 ♦ www.krmlegal.com

24.     Great American also agreed to provide coverage to Carmen Barrera, who was Kenny's business partner in Oakmont, limited "to acts within the scope of employment with Oakmont Stables or performing duties related to the conduct of Oakmont Stables."

25.     Great American further explicitly stated that the defendants "Oakland Ventures and Whiterock Farm Limited do not qualify as 'insureds' under the Policy."

26.     At the time this reservation of rights letter was issued, the operative complaint was the First Amended Compliant.  This complaint included fifteen counts; only five of the counts were directed to Oakmont, Great American's insured.

**Great American Provides Defense to Non-Insureds**

27.     As stated above, Great American notified Oakmont that it was only insuring Kenny and Barrera limited to their roles associated with Oakmont, and that Oakland Ventures was not an insured under the policy.

28.     On August 11, 2021, Great American sent a "Declination of Coverage" letter to Oakland Ventures. [Letter attached as Exhibit E.]  In this letter, Great American stated it would not pay "any damages that Oakland Ventures, LLC incurs in the Lawsuit, or any damages owed by Darragh Kenny or Carmen Barrera for liability arising out of acts performed in their capacity as members, managers and/or employees of Oakland Ventures, LLC."

29.     Despite acknowledging that Oakland Ventures was not an insured under its policy, the letter explained that "as a matter of courtesy, Great American Assurance Company will direct Ms. Ocrant [defense counsel] to defend Oakland Ventures, LLC in the Lawsuit."

30.     Despite only insuring Oakmont, Great American retained Yvonne Ocrant at Hinshaw & Culbertson, LLP to defend Oakmont, Oakland Ventures, Darragh Kenny, and Carmen Barrera.  Even though Great American did not insure Kenny and Barrera in their

Page 5 of 14

Kutner, Rubinoff & Moss, LLP
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133 ⬥ Phone: 305.358.6200 ⬥ www.krmlegal.com

individual capacities, Great American retained Ocrant to defend them in their individual capacities. In fact, Ocrant's Notice of Appearance filed with the Court stated that she represented Kenny, Berrera, Oakland Ventures, and Oakmont Stables. [Notice of Appearance attached as Exhibit F.]

31. By providing a defense to Kenny (in his individual capacity), Berrera (in her individual capacity), and Oakland Ventures, Great American was depleting the funds available to indemnify its sole insured, Oakmont Stables.

**Great American's Assessment of the Claims**

32. On December 31, 2021, Yvonne Ocrant provided Great American with her "Initial Case Assessment Review." In this review, Ocrant notified Great American that "we believe this is a case of some liability. Darragh Kenny definitively withheld prize money he won while riding Everlong horses." Ocrant further evaluated the alleged damages at $500,000.

33. After a year of extensive discovery, mediation took place in late December 2022. Leading up to mediation, on December 5, 2022, Janelle Winford, the Great American Divisional Vice President, who was the claims adjustor on the matter, notified Ocrant that "I will be in attendance with full settlement authority based on our current evaluation of the matter."

34. Mediation was unsuccessful. Within a month after mediation, counsel for Everlong requested that Great American make a settlement offer "with respect to its named insured (Oakmont Stables, LLC) only."

35. In response to this request, Janelle Winford, on behalf of Great America, recommended the following offer: "$100k cash offer along with agreement that each side will

Page 6 of 14

Kutner, Rubinoff & Moss, LLP
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133 ♦ Phone: 305.358.6200 ♦ www.krmlegal.com

keep the horses they currently have in their custody in exchange for the insured withdrawing his $348k counter claim."

36. The counter claim which the "insured" was offering to withdraw, as set forth in paragraph 35 above, was a claim brought by Whiterock Farm Limited. Whiterock Farm Limited was not an insured under the Great American Policy.

37. Defense counsel retained by Great American, Ocrant, recommended to Winford that any offer should come from "the defendants, rather than Great American." Winford agreed, and Ocrant then made the following offer: "Defendants are offering a global settlement consistent with the offer presented at mediation. Defendants will remit a one-time payment in the amount of $100,000 with an agreement that each side would keep the horses they currently have in their custody in exchange for Whiterock withdrawing its $348,000 counter claim. This creates a $448,000 global settlement."

38. The $100,000 cash portion of the offer set forth in the preceding paragraph would have been paid by Great American on behalf of all the defendants.

***Everlong's Attempts to Settle with Great American's Insured***

39. As early as May 2022, Everlong was attempting to settle solely with Oakmont. On May 5, 2022, Great American's claims adjustor emailed Ocrant, asking: "Plaintiff is inquiring about a settlement resolution involving Oakmont Stables. Do we have a basis for a settlement in our discovery to date?" In response to this inquiry, Great American never made a settlement offer solely on behalf of its insured, Oakmont.

40. Approximately three months later, on August 2, 2022, counsel for the Plaintiff, Everlong, sent a detailed demand letter and notified Great American that "Everlong will

KUTNER, RUBINOFF & MOSS, LLP
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133 ⬥ Phone: 305.358.6200 ⬥ www.krmlegal.com

consider settling with Oakmont Stables" upon Great American tendering its remaining policy limits.

41.     In response to the August 2, 2022 demand letter, on August 12, 2022, Ocrant responded, in part: "We respectfully decline to tender the remaining policy limits as your letter does not protect all my clients."  At the time this letter was written, not all of Ocrant's clients were insured under the Great American policy.  Once again, Great American never made a settlement offer solely on behalf of its insured.

42.     On September 14, 2022, Jack Hardin Towell, Kenny's partner in Oakmont, through his attorney, sent a letter to Ocrant, which in part stated: "Mr. Towell requests that Oakmont work with [Plaintiff's counsel] to settle all claims against Oakmont."  In response to this letter, Great American never made a settlement offer solely on behalf of its insured, Oakmont.

43.     Mediation took place on December 19, 2022.  Leading up to mediation, Janelle Winford, the claim adjustor for Great American, notified Ocrant that she had "full settlement authority."  At mediation, Everlong attempted to settle solely with Oakmont, Great American's insured.  Great American refused to make an offer only on behalf of Oakmont.

44.     On January 18, 2023, counsel for Everlong emailed Ocrant, stating, in part, "I requested a settlement offer from Great American with respect to its named insured (Oakmont Stables, LLC) only."   In response to this request, Great American never made a settlement offer solely on behalf of its insured, Oakmont.

45.     On April 10, 2023, Ocrant emailed Winford the following: "We have received no demand which would release all the insureds.  We have not received any settlement demand whatsoever since mediation, and that, as you know, was only for Oakmont Stables, LLC."

Page 8 of 14

Kutner, Rubinoff & Moss, LLP
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133 ♦ Phone: 305.358.6200 ♦ www.krmlegal.com

***Erosion of Great American's Coverage***

46. Great American provided $1,250,000 in insurance coverage for the claims against its insured, Oakmont.

47. This coverage included defense costs and attorneys' fees.

48. As set forth above, on December 31, 2021, counsel retained by Great American notified Great American that "we believe this to be a case of some liability." Counsel further notified Great American that the "Complaint allegations and information provided by the insured suggests a remaining $500,000 value."

49. A little more than one year later, on January 18, 2023, Great American proposed a global settlement with all defendants that was valued at $448,000.

50. At this time, approximately $500,000 remained on the Great American policy. Stated otherwise, Great American had spent approximately $750,000 defending the case, including claims that were not covered under the insurance policy.

51. On March 16, 2023, approximately $350,000 remained on the Great American policy. At this time, Great American never made a single offer to solely settle the claims against its insureds.

52. On May 30, 2023, approximately $200,000 remained on the Great American policy. At this time, Great American never made a single offer to solely settle the claims against its insureds.

53. On August 8, 2023, approximately $100,000 remained on the Great American policy. At this time, Great American never made a single offer to solely settle the claims against its insureds.

Page 9 of 14

Kutner, Rubinoff & Moss, LLP
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133 ♦ Phone: 305.358.6200 ♦ www.krmlegal.com

54. On September 8, 2023, approximately $50,000 remained on the Great American policy. At this time, Great American never made a single offer to solely settle the claims against its insureds

55. On October 16, 2023, approximately $30,000 remained on the Great American policy. At this time, Great American never made a single offer to solely settle the claims against its insureds

56. On April 25, 2024, Great American confirmed that its "policy limits have been exhausted" and "our file is now closed."

57. On May 8, 2024, the Court entered an Order granting the Motion to Withdraw filed by Hinshaw & Culbertson, the firm retained by Great American to represent its insured, Oakmont Stables, as well as its non-insureds, Kenny (in his individual capacity), Berrera (in her individual capacity), and Oakland Ventures.

58. Great American spent $1,250,000 defending the claims brought against its insureds and non-insureds without ever making a single offer to solely settle the claims brought against its insureds.

**Punitive Damages**

59. On December 19, 2022, more than sixteen months before the Great American policy limits were exhausted, Everlong filed a Motion for Leave to Amend Complaint to Assert Claim for Punitive Damages.

60. The hearing on this motion took place on August 25, 2023.

61. Between December 19, 2022 and August 25, 2023, Great American never attempted to solely settle the claims brought against its insured, Oakmont.

KUTNER, RUBINOFF & MOSS, LLP
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133 ⬥ Phone: 305.358.6200 ⬥ www.krmlegal.com

62. On November 10, 2023, the trial Court entered an order granting Everlong's Motion for Leave to Amend Complaint to Assert Claim for Punitive Damages, authorizing Everlong to file its Third Amended Complaint.

63. The Third Amended Complaint included counts for fraud and conspiracy to commit fraud against all of the defendants. These counts exposed Oakmont Stables to joint and several liability for the acts of all the defendants.

***Everlong Settles with Oakmont Stables***

64. After Great American closed its file, Ocrant withdrew as counsel for the Defendants, and the trial court granted leave to amend to seek punitive damages, counsel for Everlong and new counsel for the Defendants entered into settlement negotiations.

65. As a result of these negotiations, Everlong settled its claims against Oakmont Stables. As part of this settlement, Oakmont entered into a consent judgment with Everlong in the amount of $3.2 million. [Exhibit A.] Oakmont then assigned to Everlong its right to pursue a bad faith claim against Great American. [Exhibit B.] Everlong now brings these claims against Great American on behalf of itself and as assignee of Oakmont's claims against Great American.

## COUNT I
### BAD FAITH CONDUCT OF GREAT AMERICAN BROUGHT BY EVERLONG

66. Everlong re-asserts the allegations set forth in paragraphs 1 through 65 as set forth above.

67. Everlong brings this claim on its own behalf under Florida common law.

Page 11 of 14

KUTNER, RUBINOFF & MOSS, LLP
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133  ♦  Phone: 305.358.6200  ♦  www.krmlegal.com

68. Great American had a duty to Everlong to settle claims within its policy limits when Great American could and should have done so had Great American acted fairly and honestly towards its insureds and with due regard to their interests.

69. Great American had a duty to use the same degree of care and diligence in the handling of the claims against its insured as a person of ordinary care and prudence would exercise in the management of his or her own business.

70. Great American, through its agents, employees, and representatives, breached its duties of good faith owed to Everlong by failing to settle Everlong's claims against its insured, Oakmont Stables.

71. Great American, through its agents, employees, and representatives, breached its duties of good faith owed to Everlong by spending $1,250,000 in insurance coverage without ever attempting to settle the claims against its insured, Oakmont Stables, when Great American valued those claims between $100,000 and $500,000.

72. Great American, through its agents, employees, and representatives, breached its duties of good faith owed to Everlong by spending a large portion of its $1,250,000 in insurance coverage defending claims that were not covered by the Great American policy.

73. Great American, through its agents, employees, and representatives, breached its duties of good faith owed to Everlong by failing to settle Everlong's claims against Oakmont Stables at a time when Oakmont Stables was not facing the possibility of exposure for punitive damages.

74. Great American's actions foreseeably and proximately caused and resulted in a judgment of $3.2 million, plus accruing interest.

Page 12 of 14

**KUTNER, RUBINOFF & MOSS, LLP**
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133  ⬥  Phone: 305.358.6200  ⬥  www.krmlegal.com

**WHEREFORE**, the Plaintiff, Everlong LLC, demands judgment against the Defendant, Great American Assurance Company, for $3,200,000, plus accrued and future interest, attorneys fees and costs.

### COUNT II
### BAD FAITH CONDUCT OF GREAT AMERICAN BROUGHT BY EVERLONG AS ASSIGNEE OF OAKLAND STABLES

75. Everlong re-asserts the allegations set forth in paragraphs 1 through 65 as set forth above.

76. Everlong brings this claim as assignee of Oakmont Stables claim against Great American.

77. Great American's duties to its insureds in this case are fiduciary in nature and are non-delegable.

78. Everlong has complied with all conditions precedent.

79. Great American had a duty to Everlong to settle claims within its policy limits when Great American could and should have done so had Great American acted fairly and honestly towards its insureds and with due regard to their interests.

80. Great American had a duty to use the same degree of care and diligence in the handling of the claims against its insured as a person of ordinary care and prudence would exercise in the management of his or her own business.

81. Great American, through its agents, employees, and representatives, breached its duties of good faith owed to Oakmont Stables by failing to settle Everlong's claims against it.

82. Great American, through its agents, employees, and representatives, breached its duties of good faith owed to Oakmont by spending $1,250,000 in insurance coverage

Page 13 of 14

KUTNER, RUBINOFF & MOSS, LLP
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133  ◆  Phone: 305.358.6200  ◆  www.krmlegal.com

without ever attempting to settle the claims against Oakmont Stables, when Great American valued those claims between $100,000 and $500,000.

83. Great American, through its agents, employees, and representatives, breached its duties of good faith owed to Oakmont Stables by failing to settle Everlong's claims against it at a time when Oakmont Stables was not facing the possibility of exposure for punitive damages.

84. Great American's actions foreseeably and proximately caused and resulted in a judgment of $3.2 million, plus accruing interest.

**WHEREFORE**, the Plaintiff, Everlong LLC as assignee of Oakmont Stables, LLC, demands judgment against the Defendant, Great American Assurance Company, for $3,200,000, plus accrued and future interest, attorneys fees and costs.

### DEMAND FOR JURY TRIAL

Plaintiff, Everlong, LLC, on its own behalf and as assignee of Oakmont Stables, LLC, requests trial by jury of all issues so triable.

Respectfully submitted,

**KUTNER, RUBINOFF & MOSS, LLP**
2665 South Bayshore Drive
Suite 301
Coconut Grove, Florida  33133
Phone: 305-358-6200
Fax:    305-577-8230

By:  *s/Andrew M. Moss*
      Andrew M. Moss
      Florida Bar No. 0170259
      Moss@krmlegal.com
      Diaz@krmlegal.com

Page 14 of 14

**KUTNER, RUBINOFF & MOSS, LLP**
2665 South Bayshore Drive, Suite 301, Coconut Grove, FL  33133 ⬥ Phone: 305.358.6200 ⬥ www.krmlegal.com