IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:25-cv-80578-DAMIAN

EVERLONG, LLC, *on its own behalf,*
*and as assignee of* OAKMONT
STABLES, LLC,

      Plaintiff,

v.

GREAT AMERICAN ASSURANCE
COMPANY,

      Defendant.

_____ /

**DEFENDANT GREAT AMERICAN ASSURANCE COMPANY'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF EVERLONG, LLC'S
<u>FIRST AMENDED COMPLAINT WITH PREJUDICE</u>**

Defendant Great American Assurance Company ("Great American"), by and through

undersigned counsel, files this Reply in support of its Motion to Dismiss [ECF No. 41] (the

"Motion") Everlong's First Amended Complaint [ECF No. 40] (or "FAC") and responds to

Everlong's Response to Defendant's Motion to Dismiss [ECF No. 43] (the "Response").

<u>**INTRODUCTION**</u>

Everlong has tied itself in a knot.

Everlong first argues that the allegations in paragraphs 34, 40, 42, 44, 45, 47 and 50 of its

First Amended Complaint show that Great American's statement that Everlong has not and

cannot allege that it made any settlement demand "is unsupported." Response at 2. But, with the

exception of paragraphs 44 and 47, those allegations are recycled from Everlong's Complaint,[1]

---

[1]    *Compare* Paragraph 34 in FAC, with Paragraph 44 in Complaint (substantially similar); Paragraph 40 in FAC, with Paragraph 39 in Complaint (identical); Paragraph 42 in FAC, with Paragraph 40 in Complaint (identical); Paragraph 45 in FAC, with Paragraph 41 in Complaint (substantially similar); Paragraph 50 in FAC, with Paragraph 44 in Complaint (identical).

which allegations the Court ruled were not good enough.  Paragraph 44 references an email from defense counsel who recognized that Everlong's August 3, 2022 letter inviting Great American to make a settlement offer was not "an actual settlement demand for the policy limits."  And, all paragraph 47 says is that Mr. Kenny's partner in Oakmont, Jack Hardin Towell, asked Oakmont to work with plaintiff's counsel to settle all claims against Oakmont and that Great American never made a settlement offer solely on behalf of Oakmont.  Neither paragraph shows an actual settlement demand, so Everlong's argument about its First Amended Complaint goes nowhere.

Next, Everlong argues what it calls "the heart" of its bad faith claim, that "Great American never attempted to solely settle the claims covered by its insurance policy."  Response at 3.  The allegations supporting this argument include paragraph 85 ("Great American had an affirmative duty to, at a minimum, initiate settlement negotiations with the Plaintiff on behalf of its insured.") and paragraph 88.d. ("Great American . . . breached its duties of good faith by . . . [f]ailing to initiate settlement discussions with Everlong solely on behalf of its insured.").  Great American addressed this new breach claim—that Great American failed to initiate settlement discussions—in its Motion at pages 7–8.  This argument is also disingenuous because, as the Court caused Everlong to admit at the January 26, 2026 status conference, there is not just one insured but at least three:  Oakmont, Mr. Kenny, and Ms. Berrera.[2]  In addition, this argument fails based on Everlong's own allegation in paragraph 37 of the First Amended Complaint that Great American made a global offer that would have resolved the claims against all its insureds.  FAC at 7.  Everlong's argument that Great American had a duty to settle on behalf of only one of its insureds (*i.e.*, Oakmont) to the exclusion of other insureds, fails to state a claim on which

---

[2]     Jan. 26, 2026 Status Conference Tr. [ECF No. 39] at 5:14-6:2 ("Mr. Moss:  But what we have always said is, those were the three [Oakmont, Kenny, and Barrera] that should have been resolved.").

relief can be granted because Florida law says the opposite; Great American is not *required* to sacrifice the interests of its other insureds to benefit Everlong's interests.[3]

Everlong then argues that Great American's argument that a bad faith failure to settle claim cannot lie absent a settlement demand within limits "is not an accurate statement of the law." Response at 4. Yes it is, but as Everlong's cases show, and as Great American acknowledged on the next page of its Motion, Florida law recognizes a limited exception where an insurer may have a duty to initiate settlement discussions when liability is clear and injuries so serious that a judgment in excess of policy limits is likely. Motion at 7. This limited exception does not apply because Everlong concedes in paragraph 37 that Great American did in fact initiate settlement discussions by making a global offer that Everlong never countered.

This takes us to Everlong's response to Great American's argument that Everlong's Amended Complaint fails because the consent judgment Everlong seeks to enforce does not allocate between covered and uncovered claims. Everlong has no real response to this argument because it is indisputably correct as a matter of Florida law. Everlong says this argument is "new," and it is. But new, of course, does not make it wrong. Because some counts were uncovered, as Everlong concedes in paragraph 26 of its Amended Complaint, Florida law required Oakmont, Everlong's assignee, to allocate the consent judgment among the covered and uncovered claims before entering it. Oakmont did not, so Everlong, its assignee, is unable to recover under the policy. Though Everlong closes its brief by saying it "must" be given the opportunity to allocate its damages, that opportunity has passed. Response at 7. Tellingly,

---

[3]     *See Williams v. Infinity Ins. Co.*, 745 So. 2d 573, 577 (Fla. Dist. Ct. App. 1999) ("The insurers correctly point out that the only way they could fully protect their insureds was to settle the *entire* action for the amount of the policy limits, which only the personal representative or all of the beneficiaries could do. The only persons who would have benefitted from the proposed pre-estate settlement were the two appellants.").

Everlong offers no case cite for this plea because it appears no Florida court has ever permitted a post hoc allocation of damages between covered and uncovered claims—understandably, given the obvious mischief that may result if parties could allocate damages post-settlement.

Not only that, but Great American pointed out another hurdle to Everlong's claims: there can be no bad faith where there is no coverage, and, based on Everlong's own description of its claims, Florida's public policy plainly bars all coverage here.  Everlong's response to that argument, for which Everlong carries the burden of proof, was that the Court cannot rule on coverage at the motion to dismiss stage (the Court can do so), and to imply Great American waived or is estopped to invoke public policy (which is wrong).  Everlong's defense of its position fails to meet any of its burdens of persuasion or proof.  The Court should grant Great American's Motion.

## **ARGUMENT**

To prevail, Everlong must argue that the settlement and consent judgment it seeks to enforce – the agreement to entry of judgment and assigning all claims against an insurer – constitutes a *Coblentz* agreement that entitles Everlong to recover from Great American.[4]

> To enforce a consent judgment entered by virtue of a *Coblentz* agreement between the third-party claimant and the insured, the insured or the third-party claimant as assignee of the insured must prove the following elements in an action against the insurer: (1) coverage, (2) a wrongful refusal to defend, and (3) a reasonable and good-faith settlement. . . . In addition, the insurer is liable for the amount of the consent judgment that exceeds the policy limits where the insured proves bad faith on the part of the insurer.

---

[4]     *See, e.g.*, *Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1260 (11th Cir. 2021) ("When an insurance company wrongfully refuses to defend its insured, Florida law lets the insured settle the case himself in exchange for the plaintiff's promise to collect the settlement only from the insurance company. That type of settlement is called a "Coblentz agreement," named for the Fifth Circuit case that first approved one.") (citing *Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir. 1969)).

*Kehle v. USAA Cas. Ins. Co.*, No. 17-80447-CIV, 2019 WL 1429674, at *3 (S.D. Fla. Mar. 25, 2019) (citations omitted).  Under Florida law, an insured must first be subjected to an excess judgment before it may bring a bad faith claim against an insurer; however, a *Coblentz* agreement is a recognized exception to this rule.  *See Cawthorn v. Auto-Owners Ins. Co.*, 791 F. App'x 60, 64 (11th Cir. 2019).  Absent an actual excess judgment, to enforce the consent judgment against Great American, Everlong must show that it meets all the requirements of a *Coblentz* agreement, alongside allocation, and carries the burden of proof to show it can do so. *See id.* at 64–66 (holding that "[a] consent judgment . . . is akin to a private contract, one that it is simply acknowledged and recorded by a court" and that considering the insurer had not signed onto the consent judgment and insofar as the assignee otherwise did not meet the requirements to establish a *Coblentz* agreement, "there was no excess judgment or functional equivalent, meaning no case or controversy.").  Everlong does not seriously attempt to show that it can satisfy these requirements.

Everlong suggests, without authority, that the *Coblentz* requirements for some reason do not apply to bad faith claims.  That is untrue, as seen above, and because under Florida law, to prove bad faith, a party *must* first prove a breach of the insuring agreement.  *See, e.g., Lewis v. Allied World Specialty Ins. Co.*, No. 20-CV-20677, 2023 WL 2770538, at *8 (S.D. Fla. Apr. 4, 2023) ("We thus join Judge Gross, the Fourth DCA, and *the vast majority* of our federal colleagues in holding that, under Florida law, we must resolve a *Coblentz* plaintiff's breach-of-contract claim *before* we can adjudicate his bad-faith action.").  As Great American pointed out in its Motion, "without coverage, a bad faith claim cannot proceed." *Stephens v. Dairyland Ins. Co.*, No. 512CV442OCUAMHPRL, 2013 WL 12155825, at *3 (M.D. Fla. Nov. 26, 2013). Everlong also disputes, generally, that there is any burden to allocate its damages.  Notably,

Everlong cites nothing for that contention.  Everlong has failed to meet its burdens to establish a viable claim.  The Court should grant the Motion.

## I.      EVERLONG FAILS TO MEET ITS BURDEN TO PROVE COVERAGE

Everlong, as the one claiming coverage (as it must to succeed on a bad faith claim), has the burden to *prove* coverage, even on a motion to dismiss.  *See TL Goodson, LLC v. S.-Owner Ins. Co.*, No. 3:21-CV-178-MCR-EMT, 2022 WL 795431, at *2 (N.D. Fla. Mar. 14, 2022) ("The party claiming insurance coverage bears the burden to prove that coverage exists under the policy.") (citing *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 878 (11th Cir. 2020)) (granting motion to dismiss for lack of coverage).  Everlong does not actually dispute that it must establish coverage to prosecute a bad faith claim; rather, the below paragraph is Everlong's entire argument about coverage under the Great American policy:

> Great American raises a new argument, now claiming Everlong's case should be dismissed because the underlying claims were uncovered.  To begin with, Great American is asking this Court to determine that no coverage existed.  This is an issue that is in dispute and cannot be decided on a motion to dismiss.  Great American concludes that there "is no coverage for the underlying claim due to Florida public policy."  If it is true that Florida public policy bars coverage, then why did Great American offer $100,000 on behalf of its insured to globally settle all claims? (*See* ¶¶ 35 to 38 of the First Amended Complaint.)  This is an affirmative defense that must be raised in an answer.

Response at 6.

First, Everlong's position that a lack of coverage cannot be proven on a motion to dismiss is wrong.  Whether there is a potential for coverage on the face of a complaint and under the insurance policy is a question of law that can be, and often is, fully resolved on a motion to dismiss.  *See, e.g.*, *Racetrac Petroleum, Inc. v. ACE Am. Ins. Co.*, 446 F. App'x 211, 212 (11th Cir. 2011) ("After carefully reviewing the record and the district court's order, we conclude that the court properly granted the motion to dismiss. The pollution exclusion provision in the policies expressly excludes coverage . . . ."); *see also TL Goodson*, *supra*.

6

Second, Everlong appears to argue that any settlement offer creates coverage by estoppel. This argument is unavailing. "[E]stoppel may be used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage." *Crown Life Ins. Co. v. McBride*, 517 So. 2d 660, 661 (Fla. 1987). Moreover, under Florida law, an insurer can defend and even settle a case against its insured pursuant to a reservation of rights and then seek full reimbursement for the amounts paid that were not covered.[5]

But, merits of any estoppel or waiver arguments aside, Everlong's argument is necessarily impotent, as the issue is one of public policy. "It is well settled law that estoppel cannot operate to displace a statute or public policy." *Prout v. Prout*, 415 So. 2d 905, 906 (Fla. Dist. Ct. App. 1982) (citing, *inter alia*, *Montsdoca v. Highlands Bank & Tr. Co.*, 85 Fla. 158, 163, 95 So. 666, 668 (1923) ("The doctrines of estoppel and waiver do not in general apply in transactions that are forbidden by statute or that are contrary to public policy.")).[6] Great American cannot possibly waive or be estopped from invoking Florida's public policy.

Everlong does not state which claims Everlong contends were covered or why. *See generally* Response. Everlong does not rebut Great American's showing that the "specific allegations – theft, fraud, a conspiracy to commit the same, and a claim for punitive damages – were the *entire basis* of the underlying lawsuit." Motion at 10. Nor does (or could) Everlong

---

[5]     *See Pa. Lumbermens Mut. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co.*, 43 So. 3d 182, 183–84, 188 (Fla. Dist. Ct. App. 2010) ("The trial court granted ILM's motion for summary judgment and awarded ILM . . . the amount it spent settling the suit against Causeway. . . . We affirm . . . that portion of the final judgment awarding ILM indemnity costs for the settlement amount it paid to resolve the lawsuit. . . . [A]n insurer can seek reimbursement of its costs in defending an insured pursuant to a reservation of rights when the insurer owed no duty to defend.").

[6]     *Accord Am. & Foreign Ins. Co. v. Colonial Mortg. Co.*, 936 F.2d 1162, 1166 (11th Cir. 1991) ("Even if the umbrella carrier agreed to indemnify Colonial for intentional acts committed, 'where public policy forbids a particular insurance contract, 'public policy [also] forbids the accomplishment of the result by an estoppel.'") (brackets original) (quoting *St. Paul Ins. Companies v. Talladega Nursing Home, Inc.*, 606 F.2d 631, 634 n.2 (5th Cir. 1979)).

contest that insurance coverage for such claims is barred by Florida public policy. *See* Motion 9–11. Everlong merely states coverage is "in dispute" – but as a question of law, and one for which Everlong carries the burden of proof, Everlong must come back with something better than that. Everlong has, accordingly, conceded the point. *See, e.g.*, *Ludwig v. Poetter*, No. 2:20-CV-00008-SCJ, 2021 WL 12299076, at *9 (N.D. Ga. Sept. 23, 2021) ("The Court also agrees that this failure results in Plaintiff's abandonment of his state-law claims because a failure to respond to such a defense constitutes a concession that the defense is valid."); *ABM Ent. Worldwide, Inc. v. Felx*, No. 1:24-CV-25095-KMM, 2025 WL 1191122, at *1 (S.D. Fla. Mar. 26, 2025) ("The Court may view Defendant's failure to respond to Plaintiff's arguments as a concession.") (citing *Haasbroek v. Princess Cruise Lines, Ltd.*, 286 F. Supp. 3d 1352, 1358 (S.D. Fla. 2017)).

## II.    EVERLONG FAILS TO MEET ITS BURDEN TO PROVE ALLOCATION

As noted in the Motion, Great American asserted that, even assuming any of the underlying claims were covered (and they are not), Everlong is nonetheless unable to prove allocation, defeating its claim. Everlong's Response proves Great American is correct. Everlong states "assuming allocation is required, Everlong must be given the opportunity to allocate its damages." Response at 7. That "opportunity" arose at the time the settlement agreement was negotiated. And, at the very least, Everlong could have articulated its proposed allocation in its Response, but did not.

Florida law is clear: allocation is required to be done at the time of settlement, not nearly a year *post*-settlement. *See, e.g.*, *Peninsula at St. John's Ctr. Condo. Ass'n, Inc. v. Amerisure Ins. Co.*, No. 3:22-CV-792-ACC-LLL, 2025 WL 1547531, at *9 (M.D. Fla. May 31, 2025) ("Moreover, the claims brought against Auchter in the Underlying Lawsuit included claims and defects beyond those expressly mentioned here, claims that do not appear to be covered. . . . But

8

in order to settle all the claims against Auchter, the agreement should have allocated amounts for uncovered claims as well, such as non-covered claims for building code violations and defects relating to stucco, the roofs, and the windows.").

And a party seeking to enforce a *Coblentz* agreement against an insurer *must* allocate the damages claimed therein.  *See Chapman v. ACE Am. Ins. Co.*, No. 8:16-CV-2111-T-36MAP, 2018 WL 8459518, at *10 (M.D. Fla. June 21, 2018) ("Chapman's argument that there is no requirement that the consent judgement must apportion the damages among the claims is unavailing. Chapman . . . does not point to anywhere in the record where the damages are apportioned between the claims. . . . This failure is ultimately fatal to enforcement of the *Coblentz* agreement."), *aff'd,* 774 F. App'x 556 (11th Cir. 2019).  Without a valid *Coblentz* agreement, there can be no claims against Great American.  At a minimum, in its Response, Everlong should have offered some "feasible strategy to discern the amount" of apportionment.  *Highland Holdings, Inc. v. Mid-Continent Cas. Co.*, No. 8:14-CV-1334-T-23TBM, 2016 WL 3447523, at *5 (M.D. Fla. June 23, 2016) ("Highland Holdings not only failed to specify in the settlement agreement the amount paid to settle the covered claims but fails to offer a feasible strategy to discern the amount."), *aff'd,* 687 F. App'x 819 (11th Cir. 2017).

But in response to Great American's challenge on allocation, Everlong "provide[s] no proposed allocation between the covered and non-covered claims.  This failure is ultimately fatal to enforcement of the *Coblentz* agreement." *Chapman*, 2018 WL 8459518, at *10.  Everlong has presented no evidence of any allocable damages, has not suggested what other information it could need to allocate, and has offered no "feasible strategy" to allocation.  Just as with coverage, Everlong bears the burden of proof.  Everlong's failure to make or propose any

allocation by the time of its Response is a concession that Everlong cannot do so.  *E.g.*, *Poetter*, *Felx, supra*.

## **CONCLUSION**

For these reasons and those stated in Great American's Motion, the Court should grant the Motion and dismiss the First Amended Complaint with prejudice, without leave to amend.

Dated:  March 24, 2026

Respectfully submitted,

By:  */s/* Jennifer M. Clark
Jennifer M. Clark
Florida Bar No. 22434
Christopher S. Morin
Florida Bar No. 177600
Murray, Morin & Herman, P.A.
3550 Buschwood Park Drive,  Suite 130
Tampa, FL  33618
Tel:  (813) 222-1800
Fax:  (813) 222-1801
jclark@mmhlaw.com
cmorin@mmhlaw.com

- and -

James P. Ruggeri (*pro hac vice*)
Nicholas E. Yu (*pro hac vice*)
Ruggeri Parks Weinberg LLP
1875 K St. NW, Suite 800
Washington, DC 20006
Tel:  (202) 984-1400
Fax:  (202) 984-1401
jruggeri@ruggerilaw.com
nyu@ruggerilaw.com

*Attorneys for Defendant Great American Assurance Company*

10

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 24, 2026, a copy of the foregoing was filed electronically and served by mail on any party unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any party unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/* Jennifer M. Clark
Jennifer M. Clark
